UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
NEW YORK PACKAGING II, LLC,

                            Plaintiff,                         **REPORT AND**
                                                                                   **RECOMMENDATION**
     -against-                                          21-cv-04388 (DG)(SIL)

INTCO MEDICAL INDUSTRIES, INC.,

                            Defendant.
-------------------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

      Presently before the Court in this diversity-tortious interference with contract and breach of contract action, on referral from the Honorable Diane Gujarati for Report and Recommendation, is Defendant Intco Medical Industries, Inc.'s ("Intco" or "Defendant") motion to dismiss Plaintiff New York Packaging II, LLC's ("NYP" or "Plaintiff") Second Amended Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See* Defendant's Motion to Dismiss ("Defendant's Motion" or "Def. Mot."), Docket Entry ("DE") [29]. By way of Complaint dated June 28, 2021, later modified by Amended Complaint dated September 13, 2021 and Second Amended Complaint dated May 11, 2022, Plaintiff commenced this action alleging (i) tortious interference with contract, and in the alternative, (ii) breach of contract. *See* Second Amended Complaint ("SAC"), DE [22]. For the reasons set forth herein, the Court respectfully recommends that Defendant's Motion be granted.

I.  BACKGROUND

A. Facts

Unless otherwise indicated, the facts set forth herein are taken from the Second Amended Complaint, as well as documents attached as exhibits, and are accepted as true for purposes of the instant motion.  Plaintiff NYP is a New York limited liability company, with its principal place of business in New York.  SAC ¶ 1. Defendant Intco is a California corporation with its principal place of business in California.  *Id.* at ¶ 2.  In or about January 2020, prior to the Covid-19 pandemic, NYP and Intco Medical (HK) Co. Limited ("Intco Parent")[1] entered into several contracts for the manufacture of various merchandise, including vinyl gloves, and their shipment from China to the United States (the "Contracts").  *Id.* at ¶ 5.  Relevant to this case, the price of vinyl gloves under the Contracts was $10.30 per case for 26,550 cases.  *See* Ex. A to SAC, DE [22-1].

The Contracts also each contained a provision requiring that "[a]ll disputes arising out of the performance of, or relating to this contract, . . . shall be submitted to the China International Economic Trade and Arbitration Commission" ("CIETAC") in the event such disputes could not be settled through negotiation (the "Arbitration Clause").  *Id.*; *see also* SAC ¶ 6.  Plaintiff alleges that Intco Parent subsequently informed Plaintiff that Defendant would be performing the services called for by the Contracts and assigned the Contracts to Defendant.  SAC ¶ 7.  NYP and Intco allegedly further agreed verbally that the Arbitration Clause would be deleted from

---

[1] Defendant is the United States subsidiary of Intco Parent.  SAC ¶ 7.

2

the Contracts, as part of NYP's agreement to accept the assignment from Intco Parent to Intco. *Id.* at ¶ 8.

At the beginning of the Covid-19 pandemic, Defendant represented to Plaintiff that while the pandemic would cause slight delays, the manufacturing process would continue. *Id.* at ¶ 10. In or about late February 2020, however, Intco informed NYP's Chief Executive Officer Jeff Rabiea that it would not be performing under the Contracts due to "pressure and restrictions" implemented by the Chinese Government. *Id.* at ¶¶ 11-12. Plaintiff thereafter purchased 26,550 cases of vinyl gloves on the open market at fifty dollars per case to meet its commitments to customers. *Id.* at ¶ 13. Accordingly, NYP alleges that it has been damaged in the amount of $1,054,035 – the difference between the contract price of $10.30 and fifty dollars per case – and incurred an additional air freight fee of $104,460.41, for a total of $1,158,495.41, together with interest and punitive damages to be determined at trial. *Id.* at ¶¶ 13, 18.

## B. **Procedural History**

As set forth above, Plaintiff commenced this action against Defendant by way of Complaint dated June 28, 2021 in the Supreme Court of the State of New York, Nassau County. *See* Complaint, DE [1-1]. On August 5, 2021 Defendant removed this action to this Court on diversity jurisdiction grounds pursuant to 28 U.S.C. § 1332(a). *See* Notice of Removal, DE [1]. NYP filed its Amended Complaint on September 13, 2021, *see* Amended Complaint, DE [9], which Defendant moved to dismiss on November 19, 2021. *See* Defendant's Motion to Dismiss for Failure to

3

State a Claim, DE [13]. In denying that motion, Judge Gujarati granted NYP leave to further amend its complaint, and Plaintiff did so on May 11, 2022. *See* Order dated April 25, 2022, DE [21]; *see also* SAC. Defendant moved to dismiss the SAC based on a lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) on July 22, 2022. *See generally* Def. Mot. Judge Gujarati referred Defendant's Motion to this Court for Report and Recommendation on October 28, 2022. *See* October 28, 2022 Referral Order. For the reasons set forth below, the Court respectfully recommends that Defendant's Motion be granted without prejudice to a future demand for arbitration.

## II.  LEGAL STANDARD

### A.  Fed. R. Civ. P. 12(b)(1)

"It is axiomatic that federal courts are courts of limited jurisdiction and may not decide cases over which they lack subject matter jurisdiction." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000). To that end, "[d]etermining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). In deciding a motion to dismiss for lack of subject matter jurisdiction, "a court must accept as true all material factual allegations in the complaint and refrain from drawing inferences in favor of the party contesting jurisdiction." *U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 449 (S.D.N.Y. 2001).

4

Nevertheless, where subject matter jurisdiction is challenged, a court "may consider materials outside the pleadings, such as affidavits, documents and testimony." *Id.*; *see also All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89, n.8 (2d Cir. 2006) ("The presentation of affidavits on a motion under Rule 12(b)(1) . . . does not convert the motion into a motion for summary judgment under Rule 56."). District courts may consider these outside materials "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Core Care Health Services, Inc. v. Shalala*, No. 98-cv-5812, 1999 WL 124419, at *1 (E.D. Pa. Mar. 4, 1999) (quotations omitted).

Courts in the Second Circuit have observed that "there is a lack of clarity in the case law . . . as to what procedural mechanism should be employed by courts evaluating the enforceability of an arbitration agreement," Fed. R. Civ. P. 12(b)(1), Fed. R. Civ. P. 12(b)(6), or Section 4 of the Federal Arbitration Act (the "FAA").[2] *Alfonso v. Maggies Paratransit Corp.*, 203 F. Supp. 3d 244, 247, n. 2 (E.D.N.Y. 2016); *see also Barrows v. Brinker Rest. Corp.,* 36 F.4th 45, 49, n. 6 (2d Cir. 2022) (noting the "somewhat vexing . . . question of which of these procedures should be favored when a party moves to dismiss and compel arbitration"). In accordance with other courts in this Circuit, the Court declines to opine on the correct procedural mechanism where, as here, the result would be the same under any of the available procedures. *See e.g., Jordan-Rowell v. Fairway Supermarket*, No. 18-cv-01938 (VEC) (DF), 2019 WL 570709, at *10 (S.D.N.Y. Jan. 16, 2019), *report and recommendation*

---

[2] Here, Defendant invokes Rule 12(b)(1), and Plaintiff does not offer any opposition on this procedural question. *See* Def. Mem. at 6-7.

*adopted*, No. 18-CV-1938 (VEC), 2019 WL 568966 (S.D.N.Y. Feb. 12, 2019) (noting that Plaintiff's claims could be dismissed under Rule 12(b)(1), Rule 12(b)(6) or the FAA); *Fed. Inc. Co. v. Metropolitan Transportation Authority*, No. 12-cv-3425, 2018 WL 5298387, at *3 (E.D.N.Y. Oct. 25, 2018) (declining to address the question of which procedure applies where the outcome would be the same under any of them); *Greene v. Am. Bldg. Maint.*, No. 12-cv-4899, 2013 WL 4647520, at *2, n. 2 (E.D.N.Y. Aug. 28, 2013) (same). Further, the Court is not required to construe the motion as a motion to compel arbitration under the FAA where – as in this case – the moving party neither sought an order compelling arbitration nor indicated an intention to seek arbitration. *See Nicosia v. Amazon.com, Inc.*, 834 F. 3d 220, 230 (2d Cir. 2016).

### B. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1960 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Nevertheless, a pleading "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965). "Nor does a complaint suffice if it

6

tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009)). "[T]hreadbare recitals of the elements of a cause of action," however, that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted); *see Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). "The court's consideration on a motion under Fed. R. Civ. P. 12(b)(6) is limited to the factual allegations in the complaint; documents incorporated by reference into the complaint; matters of which judicial notice may be taken; and documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit." *Messina v. Mazzeo*, 854 F. Supp. 116, 128 (E.D.N.Y. 1994) (citing *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)); *see also Burton v. Am. Fed'n of Gov't Employees (AFGE) 1988*, No. 11-cv-1416, 2012 WL 3580399, at *5 (E.D.N.Y. Aug. 17, 2012).

### III. DISCUSSION

#### A. **Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)**

For the reasons stated below, the Court respectfully recommends granting Defendant's Motion pursuant to Rule 12(b)(1) without prejudice to any future demand

7

for arbitration. Defendant argues that the SAC should be dismissed pursuant to Rule 12(b)(1) because: (1) Plaintiff agreed to arbitrate any dispute arising from the Contracts before CIETAC against Intco Parent; and (2) the Contracts could not have been orally modified to remove the Arbitration Clause or assign performance to Defendant. *See* Memorandum of Law in Support of Defendant's Motion to Dismiss ("Def. Mem."), DE [30], at 6-10. The Court agrees.

      i.      <u>Oral Modification of the Contracts</u>

The parties agree that the Contracts between NYP and Intco Parent each contained the Arbitration Clause. *See* Def. Mem. at 4; Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss ("Opp."), DE [32], at 7-8. NYP alleges, however, that the Contracts were orally modified to remove that provision. SAC ¶ 8; *see also* Opp. at 7-8. While the Court must accept all factual allegations in the SAC as true, the Court may not "draw argumentative inferences favorable to the party asserting jurisdiction." *Almakalani v. McAleenan,* 527 F. Supp. 3d 205, 217 (E.D.N.Y. 2021) (quoting *Alt. Mut. Inc. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F. 2d 196, 198 (2d Cir. 1992)). In any event, the question is not whether the Contracts were orally modified, but rather whether such modifications were effective as a matter of law. The Court concludes that they were not.

Intco invokes the New York[3] Uniform Commercial Code's statute of frauds, NY UCC § 2-201, to argue that the Contracts could not have been orally modified to

---

[3] Although the Contracts do not contain a choice-of-law provision, Plaintiff and Defendant both assume New York law applies in their respective briefs. Accordingly, the Court applies New York law to the present motion. *See Henneberry v. Sumitomo Corp. of*

8

remove the Arbitration Clause. Def. Mem. at 9-10. NY UCC § 2-201(1) provides that contracts "for the sale of goods for the price of $500 or more" – such as the Contracts at issue here – are not enforceable "unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought." NY UCC § 2-201(1). Further, under NY UCC § 2-209, "the requirements of the statute of frauds . . . must be satisfied if the contract as modified is within its provisions." NY UCC § 2-209(3). Here, the Contracts as modified fall within § 2-201(1), and therefore any modifications to the Contracts must have been in writing to be effective. *See S & S Textiles Int'l v. Steve Weave, Inc.*, No. 00-cv-8391, 2002 WL 1837999, at *6 (S.D.N.Y. Aug. 12, 2002) (holding that an oral modification to a sale of goods contract could not be enforced under § 2-209(3)). Accordingly, the oral modification to delete the Arbitration Clause from the Contracts is invalid, and the provision survives.

Plaintiff's argument that Defendant should be estopped from asserting a statute of frauds argument because "equity will not countenance a ritualistic invocation of the Statute of Frauds, especially where the party claiming its protection has acquiesced in and profited from the very agreement it now seeks to abjure," lacks merit. Opp. at 9 (quoting *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 75 (S.D.N.Y. 1999)). While promissory estoppel may be invoked against a party asserting the statute of frauds, the doctrine "is properly reserved for the limited class of cases where the circumstances are such as to render it unconscionable to deny the promise

---

*Am.*, No. 04-civ-2128, 2005 WL 991772, at *5, n. 3 (S.D.N.Y. Apr. 27, 2005) ("Where the parties so assume, the Court need not address choice of law *sua sponte*.").

9

upon which the plaintiff has relied." *Philo Smith & Co. v. USLIFE Corp.*, 554 F. 2d 34, 36 (2d Cir. 1977) (internal quotation marks omitted). An injury that flows naturally from non-performance of an agreement, however, is not unconscionable. *See PHL Variable Insurance Co. v. Mahler*, No. 14-cv-6244, 2018 WL 2244501, at *6 (E.D.N.Y. Mar. 1, 2018); *N. Am. Knitting Mills, Inc. v. Int'l Women's Apparel*, Inc., No. 99-cv-4643, 2000 WL 1290608, at *3 (S.D.N.Y. Sep. 12, 2000). In fact, Plaintiff has not pled an injury beyond the monetary damages suffered due to Intco's alleged non-performance. Accordingly, the estoppel argument fails as a matter of law.

  ii. <u>Scope of the Arbitration Clause</u>

Having concluded that the Contracts could not have been orally modified to delete the Arbitration Clause, the Court turns to whether the Arbitration Clause applies here. The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. To determine whether claims are subject to arbitration, courts must consider: "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). While there is a general presumption that the issue of arbitrability is to be resolved by the courts, the parties may refer the issue to the arbitrator if there is "clear and unmistakable evidence" of the parties' intention to do so. *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F. 3d 205, 208 (2d Cir. 2005). When the parties "explicitly incorporate rules that empower an arbitrator to decide

10

issues of arbitrability, the incorporation serves as clear, unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Id.*

The Arbitration Clause provides that "all disputes arising out of the performance of, or relating to this contract, shall be . . . submitted to the China International Economic and Trade Arbitration Commission for arbitration in accordance with its arbitral rules." *See* Ex. A to SAC. Article 6, Section 1 of CIETAC's rules provides that CIETAC has "the power to determine the existence and validity of an arbitration agreements and its jurisdiction over an arbitration case." China International Economic and Trade Arbitration Commission (CIETAC) Arbitration Rules, effective as of January 1, 2015; *see also* Def. Mem. at 8. The Second Circuit has held that similar language incorporating the rules of other arbitral bodies operated as "clear and unmistakable" evidence of the parties' intent to delegate the issue of arbitrability to an arbitrator. *See e.g., Republic of Ecuador v. Chevron Corp.*, 638 F. 384, 395 (2d Cir. 2011) (finding that the parties incorporated the rules of the United Nations Commission on International Trade Law and therefore delegated arbitrability to an arbitrator); *Contec Corp.,* 398 F. 3d at 208 (concluding the parties' incorporation of the American Arbitration Association rules delegated the issue of arbitrability to the arbitrator). Accordingly, there is "clear and unmistakable" evidence of the parties' intention to delegate the issue of arbitrability to CIETAC and whether Plaintiff's claims fall within the scope of the Arbitration Clause is properly decided in that forum. For these reasons, the Court concludes that the parties' dispute is properly brought in arbitration, not this Court, and respectfully

recommends that Defendant's Motion be granted pursuant to Rule 12(b)(1) without prejudice to any future demand for arbitration.

### B. Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

Defendant further argues that both of Plaintiff's claims are improperly pled and should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. Def. Mem. at 11-14. For the reasons set forth below, the Court further recommends that Defendant's Motion be granted on this alternative ground.

i. Tortious Interference with Contract

To plead a cause of action for tortious interference with contract, a complaint must allege: "(1) the existence of a valid contract between the plaintiff and a third party, (2) defendant's knowledge of that contract, (3) defendant's intentional procurement of the third-party's breach of the contract without justification, (4) actual breach of the contract . . . (5) damages resulting therefrom" and (6) that "the contract would not have been breached but for the defendant's conduct." *Rich v. Fox News Network, LLC,* 939 F. 3d 112, 126-127 (2d Cir. 2019) (internal quotation marks and citations omitted); *see also Conte v. Emmons*, 895 F. 3d 168, 171 (2d Cir. 2018).

While Plaintiff pleads the existence of a valid contract, Plaintiff fails to allege that the contract was between Plaintiff and a third party. NYP alleges that the Contracts were assigned to Intco by Intco Parent. SAC ¶ 7. Under New York common law, "an assignee steps into the assignor's shoes and acquires whatever rights the latter had." *Furlong v. Shalala,* 156 F. 3d 384, 392 (2d Cir. 1998). A claim for tortious interference with a contract, however, "must be based on a *non-party* improperly

12

interfering with a contract between two contracting parties." *In re KG Winddown, LLC,* 632 B.R. 448, 491 (S.D.N.Y. 2021) (quoting *Rockland Exposition, Inc. v. All. of Auto Service Providers of N.J.*, 894 F. Supp. 2d 288, 326 (S.D.N.Y. 2012)) (emphasis in original); *see Koret, Inc. v. Christian Dior, S.A.*, 161 A.D.2d 156, 157, 554 N.Y.S. 2d 867, 869 (1st Dep't 1990) ("It is well established that only a stranger to a contract, such as a third party, can be liable for tortious interference with contract."); *see also UBS Sec. LLC v. Highland Cap. Mgmt., L.P.*, 86 A.D.3d 469, 477, 927 N.Y.S.2d 59 (2011) (dismissing claim for tortious interference with contract where defendant was not a stranger to the contract at issue). Here, Plaintiff concedes that it accepted the assignment from Intco Parent to Defendant and continued to engage with Defendant until such time as Defendant indicated it would not perform under the Contracts. *See* SAC ¶¶ 7-12. Accordingly, Intco was not a "stranger" to the Contracts and NYP has failed to plead the first element of tortious interference with contract.

Moreover, Plaintiff has not adequately pled that the Contracts were between Plaintiff and a third party because as Intco Parent's agent, Defendant was not an outsider to the contracts. Although an agent may be liable for the tortious interference of a contract entered into by its principal, that agent may only be held liable where the agent acted outside the scope of its authority. *See Resource Mine, Inc. v. Gravity Microsystem LLC*, No. 09-cv-0573, 2015 WL 1886982, at *2 (E.D.N.Y. April 24, 2015); *Friedman v. Wahrsager*, 848 F. Supp. 2d 278, 298 (E.D.N.Y. 2012); *Barbara v. MarineMax, Inc.*, No. 12-cv-0368, 2012 WL 6025604, at *18 (E.D.N.Y. Dec. 4, 2012). NYP has not pled that Intco acted outside the scope of its authority when

13

the alleged breach of contract occurred. For both of these reasons, Plaintiff has failed to allege a viable tortious interference with contract claim.

    ii.    <u>Breach of Contract</u>

As an alternative to its tortious interference with contract claim, Plaintiff asserts a breach of contract cause of action. To successfully plead a claim for breach of contract, a plaintiff must allege: "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Int'l Cards Co., v. Mastercard Int'l Inc.*, 13-cv-2576, 2016 WL 3039891, at *3 (S.D.N.Y. May 26, 2016) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015)).

Here, NYP alleges that "new Agreements between NYP and Intco which involved the manufacture and shipment of vinyl gloves and related items were breached by Intco when Intco failed to manufacture and ship said items for and on behalf of NYP." SAC ¶ 20. These "new agreements" came about "after the Intco parent assigned the Agreements with NYP to Intco." *Id.* As noted above, under the UCC statute of frauds, contracts "for the sale of goods for the price of $500 or more" must be in writing to be enforceable. NY UCC § 2-201(1). Plaintiff has not pled that the "new Agreements" were memorialized in a writing. Accordingly, NYP has failed to properly plead the first element of its breach of contract claim, and that claim should be dismissed. *See Mtivity, Inc. v. Off. Depot, Inc.*, 525 F. Supp. 3d 433, 444 (E.D.N.Y. 2021) (dismissing breach of contract claim where plaintiff failed to plead an agreement in writing as required by the statute of frauds).

14

## IV. LEAVE TO FILE AMENDED CLAIMS IN DEMAND FOR ARBITRATION

Because the Court is unable to determine whether NYP could state a valid cause of action in an amended pleading, and because leave to amend should be fully granted, *see* Fed. R. Civ. P. 15(a); *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 604 (2d Cir. 2005), the Court recommends that Plaintiff's claims be dismissed without prejudice to being refiled in arbitration.

## V. CONCLUSION

For the reasons set forth above, the Court respectfully recommends that Defendant's Motion be granted without prejudice to a future demand for arbitration.

## VI. OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:     Central Islip, New York
           January 3, 2023

/s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge